UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENDRA DEANNA SULLIVAN,

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No. 17-cv-04987-RS

**ORDER REMANDING FOR FURTHER PROCEEDINGS**

## I. INTRODUCTION

Plaintiff Kendra Sullivan appeals the decision of the Commissioner of Social Security ("the Commissioner") denying her disability benefits under the Social Security Act ("SSA"). An Administrative Law Judge ("ALJ") reviewed Sullivan's application and determined she was not disabled and thus not eligible for benefits. Upon consideration of the parties' cross-motions for summary judgment and for the reasons discussed below, the ALJ's decision is vacated and the matter is remanded for further proceedings consistent with this opinion.

## II. BACKGROUND[1]

Sullivan is a thirty-five-year-old female who suffered abuse as a child. After working for several years, she developed psychiatric symptoms with diagnoses including borderline personality disorder and substance addiction disorder.

---

[1] This synopsis is based on the certified administrative record ("AR").

On August 19, 2010, Sullivan filed an application for disability insurance benefits, alleging disability beginning on July 3, 2009. She was twenty-eight years old at the time. An ALJ held a hearing on Sullivan's application in December 2012 and then, in March 2013, issued a decision finding she was not disabled and therefore not entitled to benefits. Sullivan requested review of the decision by the Appeals Council which, in June 2014, vacated the ALJ's order and remanded the case for further consideration.

Upon remand, the ALJ held a new hearing in May 2015, at which Sullivan testified along with medical expert Dr. Kristy Farnsworth and vocational expert ("VE") Alan L. Ey. A second hearing was held in January 2016 at which the ALJ again heard testimony from Sullivan and VE Ey as well as from medical expert Dr. Tracy R. Gordy.

Based on the hypothetical the ALJ provided at the January 2016 hearing, the VE opined Sullivan was not able to perform her past work, but was capable of performing two jobs in the Dictionary of Occupational Titles ("DOT"). The ALJ subsequently denied Sullivan's disability applications on April 1, 2016. In his written opinion, the ALJ considered medical opinions from Dr. Le and Dr. Sachdev, both Sullivan's treating psychiatrists, examining physician Dr. Weems, and State Agency medical consultant Dr. Santulli. On August 28, 2017, Sullivan commenced this action seeking judicial review of the ALJ's decision.

### III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court has jurisdiction to review the Commissioner's final decision denying benefits under the SSA. An ALJ's decision to that effect must be affirmed if it is supported by substantial evidence and is free of legal error. *Beltran v. Astrue*, 700 F.3d 386, 388 (9th Cir. 2012). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam). In determining whether a decision is supported by substantial evidence, the court must examine the administrative record as a whole, considering all the facts. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the evidence supports more than one rational interpretation, the court must

defer to the ALJ's decision. *Id*. at 1258. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (internal citation and quotation marks omitted).

## IV. DISCUSSION

A person is "disabled" for the purposes of receiving Social Security benefits if she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner must follow a five-step sequential inquiry. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden rests on the claimant to prove: (1) she is not working; (2) she has a severe medically determinable impairment that is expected to last more than twelve months; and either (3) that impairment is severe enough to meet or equal an impairment listed as a priori disabling without further vocational-medical evidence; or (4) the impairment causes such functional limitations that she cannot do her past relevant work. 20 C.F.R. § 404.1520(a)(4)(I)-(iv).

If the claimant successfully proves she cannot do her past work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other work that exists in significant numbers in the economy; otherwise, the claimant will be found disabled. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). Moreover, if the claimant's impairment does not meet or equal a listed impairment under step three, the ALJ must determine the claimant's residual functional capacity ("RFC") and apply it during steps four and five to make a final disability determination. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4), which describes the five-step process).

Here, the ALJ followed this five-step inquiry. At step one, he found Sullivan had not engaged in any substantial gainful activity since her alleged onset date in 2009. At step two, he found Sullivan had severe medically determinable impairments, including a borderline personality disorder and a substance addiction disorder. At step three, he found Sullivan's impairments did not

ORDER REMANDING FOR FURTHER PROCEEDINGS
CASE NO. 17-cv-04987-RS
3

meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ also determined Sullivan had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple repetitive tasks involving simple work-related decisions. She can have occasional contact with coworkers and the public in the setting of the contact needed to perform a job.

At step four, the ALJ determined Sullivan was unable to perform her past relevant work. At step five, he concluded, based on Sullivan's age, education, work experience, and RFC, jobs exist in the national economy that Sullivan could perform, and she therefore was not disabled.

Sullivan now contends on appeal that the ALJ's assessment of her RFC at steps three and four was not based on substantial evidence and contained legal error. This mistaken RFC assessment resulted in the ALJ's incorrect determination at step five that Sullivan is not disabled. Sullivan advances several lines of attack on the ALJ's opinion, arguing he improperly: (A) rejected the opinions of her treating psychiatrist, examining physician, and a mental health specialist who was also her case manager; (B) discounted the credibility of Sullivan's testimony as to her symptoms; and (C) failed to include all of Sullivan's limitations in the hypothetical he propounded to the VE.

Parts of Sullivan's first and third arguments are persuasive, especially with respect to the ALJ's failure to credit certain limitations described by Sullivan's treating psychiatrist Dr. Sachdev and examining physician Dr. Weems. Sullivan's second argument is also compelling. Because employment would not be feasible in a hypothetical containing the limitations reported by either Dr. Sachdev or Dr. Weems (AR 70-72), and therefore Sullivan would be deemed disabled in either scenario, the case is remanded so that the ALJ can further consider whether these limitations exist.

**A. Dr. Sachdev's Opinion**

Sullivan contends the ALJ improperly rejected the medical opinion of her treating psychiatrist Dr. Sachdev. To reject a treating physician's opinion, an ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" if that opinion is

contradicted by another doctor, or "clear and convincing reasons" if it is uncontroverted. *Lester*, 81 F.3d at 830 (citation and internal quotation marks omitted).

Here, Dr. Sachdev's opinion that Sullivan had little to no ability to deal with work stresses, maintain attention and concentration, behave in an emotionally stable manner, or relate predictably in social situations was contradicted by the assessment of Dr. Le (another of Sullivan's treating psychiatrists), Dr. Farnsworth, and Dr. Gordy, all of whom determined Sullivan was only moderately limited in these functions. AR 27-29. The reasons offered by the ALJ for rejecting Dr. Sachdev's opinion, however, were either not specific enough or unsupported by substantial evidence. First, the ALJ stated in very general terms that Dr. Sachdev's opinion was unsupported by Sullivan's treatment records from her visits to Bay Area Doctor's Inc. without pointing to any specific conflict between his opinion and the treating records. AR 29. This is far from "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings" required by the law for rejecting a contradicted treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

Second, the ALJ based his rejection of Dr. Sachdev's opinion on the fact that Sullivan was able to begin working on a part-time basis in the same month Dr. Sachdev reached those conclusions. In doing so, however, he ignored that Sullivan stopped working after a few weeks. AR 614-15. Sullivan also testified that, during her job as a cashier, she often felt angry and attacked when rushed by customers and was in tears after a run-in with her boss who forced her to multitask. AR 84-86. This record is consistent with Dr. Sachdev's opinion about Sullivan's poor ability to regulate emotions and does not constitute substantial evidence for rejecting his opinion.

**B. Dr. Weems's Opinion and Sullivan's Testimony**

Sullivan further argues the ALJ improperly rejected the medical opinion of her psychiatric consultative examiner Dr. Weems. The standard for rejecting an examining physician's opinion is similar to the aforementioned standard applicable to the opinion of a treating physician. To disregard an examining physician's opinion, an ALJ must provide "specific and legitimate reasons

that are supported by substantial evidence in the record" if that opinion is contradicted by another doctor, or "clear and convincing reasons" if it is uncontroverted. *Lester*, 81 F.3d at 830-31 (citation and internal quotation marks omitted).

Here, the ALJ partially accepted Dr. Weems's opinion and partially rejected it. More specifically, he gave no weight to Dr. Weems's conclusions regarding Sullivan's attendance and performance issues at work stemming from her difficulty with getting out of bed. AR 29. While this portion of Dr. Weems's opinion was contradicted by Dr. Gordy—who testified that "there's no evidence that she has a significant sleep disorder" (AR 60)—the only reason the ALJ gave for rejecting it was that it was based on Sullivan's self-report. This is not a legitimate reason for rejecting a psychiatric evaluation. "[U]nlike a broken arm, a mind cannot be x-rayed . . . [and psychiatric] [d]iagnoses will always depend in part on the patient's self-report." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citation omitted). Thus "[t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology." *Id.* (citation and internal quotation marks omitted). To find otherwise would mean virtually all mental health diagnoses could be arbitrarily rejected by an ALJ.

Moreover, as in *Buck*, Dr. Weems' opinion was not based only on Sullivan's self-report. Dr. Weems "also conducted a clinical interview and a mental status evaluation [(AR 25)]. These are objective measures and cannot be discounted as a self-report." *Buck*, 869 F.3d at 1049 (internal quotation marks omitted). Accordingly, the ALJ did not adequately provide specific and legitimate reasons supported by substantial evidence to justify his rejection of Dr. Weems's opinion.

The Commissioner attempts to avoid this conclusion by contending that self-report is a valid basis for rejecting an examining physician's opinion, citing *Turner v. Commissioner of Social Security*, 613 F.3d 1217 (9th Cir. 2010) and *Tommasetti v. Astrue*, 553 F.3d 1035 (9th Cir. 2008). As an initial matter, the Commissioner's reliance on *Turner* is inapposite. In *Turner*, a treating doctor's opinion was rejected for being "based *almost entirely* on the claimant's self-reporting . . . *without any independent analysis or diagnosis*." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (emphasis added). As noted above, however, Dr. Weems also

conducted a clinical interview and a mental status evaluation (AR 25) and therefore reached her diagnosis with the benefit of independent analysis and not "based almost entirely" on self-reporting.

The Commissioner's reliance on *Tommasetti* is similarly misplaced. The holding of *Tommasetti* is that "an ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been *properly discounted as incredible*" (emphasis added) (internal quotation marks omitted). 553 F.3d at 1042. Even if *Buck* had not tacitly overruled *Tommasetti*, Sullivan's self-reports have not been "properly discounted as incredible" such that reliance on them could be an appropriate basis for their rejection. To reject a claimant's testimony, there must be either (1) "affirmative evidence showing that the claimant is malingering"; or (2) "clear and convincing" reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *see also Schow v. Astrue*, 272 F. App'x 647, 651 (9th Cir. 2008) (laying out the same standard).

With regard to prong one, courts generally only find malingering where there is strong evidentiary support for doing so. In *Mohammad v. Colvin*, for example, the court found evidence of malingering based on "three instances in which [the claimant's] symptoms disappeared after arriving at the emergency room with her son, a psychological evaluation that refers to a rule-out malingering diagnosis made by another examining psychologist, and the provisional malingering diagnosis from [an examining psychologist]." 595 F. App'x. 696, 697-98 (9th Cir. 2014); *see also Berry v. Astrue* 622 F.3d 1228, 1235 (9th Cir. 2010) (malingering established where claimant reported refraining from doing volunteer work "for fear of impacting his disability benefits," and claimed disability dating from his last day of employment despite admitting he left his job because his employer went out of business and "probably would have worked longer had his employer continued to operate."). By contrast, in *Cha Yang v. Commissioner of Social Security Administration*, a doctor's notation "to R/O [rule out] malingering" was "not a clear, affirmative diagnosis that [the claimant] was actually malingering" because that doctor "failed to follow up on his suspicions and none of [the claimant's] other treating or examining doctors suggested that [the claimant] might be malingering." 488 F. App'x 203, 205 (9th Cir. 2012).

ORDER REMANDING FOR FURTHER PROCEEDINGS
CASE NO. 17-cv-04987-RS
7

Here, the ALJ made no finding that Sullivan was malingering. This is not especially surprising since the record does not appear to support such a finding. There is no evidence that comes close to that relied upon by the courts in *Colvin* and *Berry* nor even evidence comparable to the inadequate doctor's notation in *Cha Yang*.

In the absence of affirmative evidence of malingering, the ALJ must find "clear and convincing" reasons to reject Sullivan's testimony. This he did not do. The ALJ pointed to Sullivan's ability to handle daily activities, childcare, and work as evidence that her statements regarding her symptoms were not credible. AR 30. Discounting Sullivan's reported work limitations based merely on her daily activities or childcare, however, was inappropriate given that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Sullivan's difficulties with concentration, for example, might not affect her ability to complete activities at home like doing laundry, cooking, or bathing, but might still pose problems in a workplace where more persistent attention is required. Nor is the fact that Sullivan was able to host a Thanksgiving dinner for her boyfriend and his mother inconsistent with her claimed limitations in social function; dining with people she trusted and with whom she had a relationship is very different from confronting strangers or unfamiliar coworkers she may not trust. Moreover, as explained above in the discussion of Dr. Sachdev's opinion, Sullivan's ultimately failed work attempt is consistent with the symptoms she describes.

The ALJ also identified Sullivan's failure to seek or be compliant with treatment as undermining her credibility. AR 30. Although it is true that for most physical illnesses "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated," *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007), the case is less strong for psychiatric conditions. This is because for physical pain, "a person's normal reaction is to seek relief from pain, and [] modern medicine is often successful in providing some relief." *Id.* Psychiatric problems, by contrast, cannot be cured as predictably and, while potentially less

debilitating at home, may be exacerbated by the pressures of the workplace. Thus, in such a case, "where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, the approach to credibility [based on lack of treatment or non-compliance] makes little sense." *Id.* As the Ninth Circuit has noted, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). In light of this guidance, while the several instances of non-compliance paired with Sullivan's failure to seek treatment until a few months after the alleged onset of her disability cast some doubt on her testimony, they are not "clear and convincing" reasons justifying its wholesale rejection.

Accordingly, because Sullivan's self-reports have not been "properly discounted as incredible," the rejection of Dr. Weem's opinion is not justified under *Tommasetti*. Nor is it justified by any other specific and legitimate reasons, supported by substantial evidence in the record, which have been adequately identified by the ALJ.

**C. Steven Blum's Opinion**

Sullivan unconvincingly argues the ALJ erred in failing to consider or discuss the opinion of Steven Blum, a mental health specialist who led a PTSD therapy group in which Sullivan took part and who later became her case manager. As an initial matter, "an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (citation omitted). Further, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.*

Sullivan contends the ALJ's decision ignored Blum's testimony about Sullivan's issues with regard to emotional self-regulation and concentration, but these limitations are incorporated into the hypothetical the ALJ propounded to the VE in the 2016 hearing. To begin with, the ALJ first considered Blum's opinion in the 2012 hearing in which he testified. Based in part on Blum's testimony, Dr. Kivowitz, a medical expert at the hearing, opined that Sullivan had moderate limitations in concentration and social relationships. AR 114. Adopting Dr. Kivowitz's opinion, the ALJ denied Sullivan's application in his initial decision. AR 159.

In his 2016 decision, the ALJ gave great weight to Dr. Farnsworth's opinion, which similarly described Sullivan as moderately limited in concentration and social functioning. AR 28-29. These limitations were then incorporated in the hypothetical given to the VE, which confines Sullivan's work to "simple repetitive tasks involving simple work-related decisions" and "occasional contact with coworkers and the public in the setting of the contact needed to perform a job." These descriptions are consistent with some emotion regulation and concentration problems. In short, the ALJ's 2016 hypothetical incorporated limitations found by Dr. Kivowitz, which takes into account Blum's opinion. Thus, the ALJ did give adequate consideration to Blum's opinion even without explicitly mentioning it.

## V. CONCLUSION

In sum, the ALJ did not provide adequate reasons for rejecting Dr. Sachdev's and Dr. Weems's opinions or Sullivan's testimony. Although he did not err in failing to mention Blum's testimony, Dr. Sachdev's and Dr. Weems's opinions, if accepted, would preclude Sullivan's employment and are therefore potentially dispositive. The ALJ thus did not satisfy his burden at step five of properly weighing Sullivan's abilities in determining what work she is capable of doing. Accordingly, the ALJ's decision is vacated, and the matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

Dated: June 4, 2018

RICHARD SEEBORG
United States District Judge